UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SEAN GARRANT, ) | |
| ) | |
| Plaintiff, ) | Case No. C09-1170-TSZ-BAT |
| ) | |
| v. ) | **REPORT AND** |
| ) | **RECOMMENDATION** |
| MICHAEL ASTRUE, Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

Plaintiff Sean Garrant seeks review of the denial of his application for Supplemental Security Income and disability benefits by the Commissioner of the Social Security Administration. Dkt. 3 at 1. Plaintiff argues the ALJ erred by rejecting the medical opinions of Drs. Lemere, Parker, Ruddell, and Dees, and psychiatric nurse practitioner, Kay Crampton, and finding plaintiff has the residual functional capacity ("RFC") to perform past relevant work. For the reasons set forth below, the Court recommends that the Commissioner's decision be **REVERSED** and **REMANDED** for further proceedings.

## I.  FACTUAL AND PROCEDURAL HISTORY

Plaintiff is 39 years old, graduated from high school and has worked as a carpenter, roofer, laborer, assistant manager, and foreman in the construction industry. Tr. 88, 150, 128-134. Plaintiff applied for disability insurance benefits and Supplemental Security Income on May 19 and May 31, 2005, respectively; he alleged an onset date of November 1, 2002. Tr. 478. His

REPORT AND RECOMMENDATION – 1

application was denied initially and on reconsideration. Tr. 74-80. After a hearing conducted on January 29, 2008, the Administrative Law Judge ("ALJ") issued a decision finding plaintiff not disabled. Tr. 29-45. On July 24, 2009, the Appeals Council denied review of that decision, making it the Commissioner's final decision under 42 U.S.C. § 405(g). Tr. 3.

## II. THE ALJ'S DECISION

Applying the five-step[1] sequential evaluation process for determining whether a claimant is disabled, the ALJ found that plaintiff has not engaged in substantial gainful activity since November 1, 2002, the alleged onset date. Tr. 34.

At step two, the ALJ found that plaintiff had the following severe impairments: depressive disorder, anxiety disorder, substance abuse in remission, and hypertension. *Id.*

At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments.[2] Tr. 38.

Before proceeding to step four, the ALJ found that plaintiff had the RFC to:

> adequately perform the mental activities generally required by competitive, remunerative, unskilled work. Specifically, he can understand, remember, and carry out simple and detailed instructions compatible with unskilled work. He has would have [sic] an average ability to perform sustained work activities (i.e., can maintain attention and concentration, persistence, and pace) in an ordinary work setting on a regular and continuing basis within customary tolerances of employer rules regarding sick leave and absence. A "regular and continuing basis" means eight hours a day, for five days a week or an equivalent work schedule (Social Security Ruling 96-8p). He can make judgments commensurate with the functions of unskilled simple work-related work and decisions, respond appropriately to supervision, co-workers, and work situations, and deal with changes all within a routine work setting. He can perform work not dealing with the general public, as in waiting on customers in a retail environment but incidental contact with the general public is not precluded such as may occur in a work environment cleaning hotel/motel rooms.

---

[1] *See* 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P, Appendix 1

REPORT AND RECOMMENDATION – 2

Tr. 39.

At step four, the ALJ found that plaintiff could perform his past relevant work as a construction worker II and was therefore not under disability from November 1, 2002 through the date of the decision. Tr. 45.

### III. STANDARD OF REVIEW

This Court may set aside the Commissioner's denial of disability benefits when the ALJ's findings are based on legal error or not supported by substantial evidence. 42 U.S.C. § 405(g); *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that the Court must uphold. *Id.*

### IV. DISCUSSION

**A.     Medical opinions of Dr. Lemere, Dr. Parker, and Dr. Ruddell**

Plaintiff argues the ALJ erred in giving no weight to the opinions of psychiatrist Frederick Lemere, and psychologists Robert Parker and Alysa Ruddell. Dkt. 12 at 14. The ALJ gave eight reasons for rejecting the opinions. Tr. 43-44. The Commissioner concedes four reasons are

REPORT AND RECOMMENDATION – 3

1  improper[3] but argues the following remaining reasons are valid.  Dkt. 17 at 11.

2         First, the ALJ rejected the opinions on the grounds that the "evaluators believed the
3  claimant's statements that he was in long-term remission from all drugs and alcohol which is
4  contrary to the medical evidence of record."  Tr. 43.   This is not a clear and convincing reason to
5  reason to reject the opinions.  At step-two, the ALJ stated, "having reviewed all of the medical
6  evidence of record, I find that the evidence supports the conclusion that the claimant has the
7  following 'severe' impairments: . . . substance abuse in remission."  Tr. 38.  Having made this
8  finding, the ALJ in evaluating plaintiff's RFC, cannot flip-flop and reject a doctor's opinion on the
9  grounds that plaintiff has not experienced long-term remission of drug and alcohol use.

10        Further proceedings are necessary to clarify the decision's internal inconsistency. If
11  plaintiff's drug and alcohol use is in remission, the doctors' beliefs about remission do not
12  undermine their opinions.  On the other hand, if plaintiff's drug and alcohol use is not in
13  remission, as ALJ's RFC assessment appears to assume, further proceedings are necessary to
14  determine whether the doctors would reach the opinions they have previously given and whether
15  plaintiff's severe impairments would persist if he stopped using drugs or alcohol.

16        This issue cannot be resolved based on Dr. Paul Michels' opinions which the ALJ adopted
17  in assessing plaintiff's RFC.  Tr. 43.  Evaluating plaintiff at the request of the Washington Social
18  Security Disability Determination Services, Dr. Michels opined plaintiff suffered from depressive
19  disorder, was dependent upon opiates and gets methadone maintenance therapy.  Tr. 309, 313.

20

21  ─────────────
[3] The Commissioner concedes the ALJ erred in rejecting the doctors' opinions on the grounds that: 1) the opinions are
22  likely accommodation opinions rather than opinions on residual functional capacity and the ability to work, 2) the
    evaluations were completed to generate evidence for the current appeal and to help plaintiff continue to receive
    welfare benefits and to secure social security benefits, 3) it is possible the opinions were provided to help a patient
23  with whom the doctor sympathizes, and 4)  the opinions were provided just to satisfy the requests of a demanding
    patient and to avoid doctor-patient tension.  Tr. 43-44.

REPORT AND RECOMMENDATION – 4

He stated plaintiff's

> pace and persistence seem mildly to moderately impaired.  Although he may have the intellectual capacity to understand, remember, and follow both complex and simple instructions, his depressive symptoms may occasional create difficulties completing specific tasks in a timely or consistent manner.  Interactions with others may be mildly impaired by his depressive and anxiety symptoms.  Stress may cause transient worsening of these symptoms.

Tr. 314.  He also stated that "[c]hronic use of opiates even in the form of prescribed agonist maintenance therapy can contribute or cause depressive symptoms."  *Id.*  He did not, however, explain whether plaintiff's use of opiates actually caused or contributed to his depressive symptoms and if so whether he would still have these limitations if he stopped using drugs.

Second, the ALJ rejected the doctors' opinions on the grounds that they "are not supported by the objective medical evidence."  Tr. 43. This bald statement is not the type of specific, legitimate reason based on substantial evidence in the record that the Court requires when the opinion of a physician is rejected.  *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citations omitted).  As the Court in *Embrey v. Bowen* stated:

> To say that medical opinions are not supported by sufficient objective findings . . . does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. Moreover the ALJ's analysis does not give proper weight to the subjective elements of the doctors' diagnoses. The subjective judgments of treating physicians are important, and properly play a part in their medical evaluations. Accordingly, the ultimate conclusions of those physicians must be given substantial weight; they cannot be disregarded unless clear and convincing reasons for doing so exist and are set forth in proper detail.

849 F.2d 418, 421-22 (9th Cir. 1998).

Third, the ALJ rejected the doctors' opinions on the grounds that "the limitations conflict with plaintiff's actual level of functioning."  Tr. 43.  The ALJ found plaintiff makes his own

REPORT AND RECOMMENDATION – 5

meals, does household chores for himself and his mother, goes to appointments, goes grocery shopping, and takes the bus. Tr. 42. Based on these findings, the ALJ concluded plaintiff could "manage a schedule, and be around others, which belies his allegations of agoraphobia or panic attacks when around other people." *Id.* The ALJ also found claimant is "engaging in a normal level of daily activity, social interaction and activities which require concentration." Tr. 42. These conclusions are not supported by the record.

Plaintiff's level of daily activities and social interaction are far from normal. Plaintiff testified he had "a hard time being on the bus" because he has a "big problem . . . being out in public." Tr. 513. He testified he did not drive and took the bus only because he had to. *Id.* Plaintiff stated he has memory problems, misses appointments, and needs a notebook to keep track of his daily activities. Tr. 111. Dr. Steve Tangney, Ph.D. described plaintiff's typical day as "get methadone, have coffee, read paper, visit mom at work sometimes, read a book, play the guitar." Tr. 262. Dr. Michels noted that plaintiff did household chores "regarding his use of his mother's house" but did not indicate plaintiff did chores for his mother as the ALJ found. Dr. Michels noted plaintiff "doesn't belong to any groups, clubs, churches or other organizations," "has few friends but hasn't been keeping in touch lately." Tr. 313. The doctor described a typical day for plaintiff as:

> He gets out of the house on a daily basis to go to the methadone clinic. He might go out shopping once or twice a monthly. On a typical day, he goes to bed at about 11:00 p.m. He's up at about 6:30 a.m. He'll take his medications and take care of basic hygiene. He catches the bus at ten to 7:00 and goes to the methadone clinic to pick up his methadone. He'll head home by bus. He'll eat breakfast. He'll check his schedule. He might have to go to a group or probation officer meeting. He may or may not eat lunch. He'll watch television. He'll visit with his mother when she gets home. He'll eat a late supper. In the evenings he'll read, play the guitar, or write. He bathes every other night.

REPORT AND RECOMMENDATION – 6

1  Tr. 313.  Additionally, plaintiff's activities do not establish that plaintiff can "concentrate" as
2  found by ALJ.  While the record indicates plaintiff reads the paper, reads books and plays the
3  guitar, there is no indication as the length of these activities, whether plaintiff reads complicated
4  materials, or whether plaintiff finishes what he starts.  Hence these activities shed little to no light
5  on whether plaintiff can adequately perform the mental activities generally required by
6  competitive, remunerative, unskilled work; whether he can understand, remember, and carry out
7  simple and detailed instructions compatible with unskilled work; or whether he has an average
8  ability to perform sustained work activities (i.e., can maintain attention and concentration).
9       And fourth, the ALJ rejected Dr. Ruddell's opinions on the grounds the doctor opined
10 plaintiff's limitations would last between 6 and 12 months.  Dkt.  17 at 11 (citing Tr. 44, 314).
11 This is not a specific and reason to reject the doctor's opinions.  While it may be relevant to
12 whether plaintiff's disability is for a closed period, it is not probative of the doctor's opinions
13 about plaintiff's impairments and limitations.
14 **B.     Nurse Practitioner Kay Compton**
15      Plaintiff argues the ALJ failed to give legitimate reasons to disregard the opinions of
16 treating psychiatric nurse practitioner Kay Compton ARNP.  Dkt. 12 at 16.  The ALJ first rejected
17 Ms. Compton's opinions "for the same reasons" the ALJ gave in rejecting the opinions of Dr.
18 Lemere, Dr. Parker, and Dr. Ruddell.  Tr. 44.  As discussed above, these are erroneous reasons.
19      Next, the ALJ rejected Ms. Compton's opinions because her evaluation forms "used
20 identical language and indicated the same symptoms and limitations, giving the appearance that
21 she merely copied the forms rather actually [sic] conducted updated evaluations." Tr. 44.  This
22 would be a legitimate reason if the evidence showed Ms. Compton did not actually evaluate
23 plaintiff.  But as the ALJ points to no evidence showing this, the Court concludes it is not a

REPORT AND RECOMMENDATION – 7

legitimate reason to reject Ms. Compton's opinions.

The ALJ also rejected Ms. Compton's opinions because she is not an acceptable medical source. Although Ms. Compton is not an acceptable medical source, her opinion nevertheless constituted competent evidence to show the severity of plaintiff's mental impairment; the ALJ was therefore required to consider her opinions under the Commissioner's regulations. *See* 20 C.F.R. §§ 404.1513(d), 416.913(d); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C(1)(c). Hence the fact that Ms. Compton is not an acceptable medical source, alone, is not a proper basis to reject her opinions. Rather, to discredit Ms. Compton's opinion, the ALJ must provide "germane" reasons. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir.1993). Here, the ALJ has failed to do so.

And finally, the ALJ gave no weight to Ms. Compton's GAF score of 40 on the ground that the score is "out of proportion to other reliable sources." Tr. 44. With the exception of Dr. Michel's GAF score of "approximately 60," Ms. Compton's GAF score is not out of proportion to the GAF scores of other medical evaluators. Ms. Compton assessed plaintiff a GAF score of 40 in July 2007 and 51 in October, 2005. Tr. 221, 256. Dr. Ruddell assessed a GAF score of 45 to 50 in April, 2005 and Dr. Steve Tangney, Ph.D. assessed a GAF score of 38 in July, 2005. These GAF scores indicate that plaintiff's functioning fluctuates, and the two different GAF scores Ms. Compton assessed bears this out. Accordingly, the Court finds the ALJ failed to provide an adequate reason to reject Ms. Compton's GAF score.

**C.     Post-hearing opinion of Dr. Dees**

After the ALJ issued the adverse decision in this case, Dr. Wayne Dees, Ph.D. completed a DSHS evaluation and administered the Beck Depression Inventory, Beck Anxiety Inventory and Hamilton Depression inventory. Tr. 497. Dr. Dees opined plaintiff had severe limitations in two worked related categories and marked limitations in four categories. Tr. 493. Plaintiff claims that

REPORT AND RECOMMENDATION – 8

1  the Appeals Council erred in rejecting the opinion of Dr. Wayne Dees, Ph.D.  Dkt. 12 at 16.  This

2  argument has no merit because the appeals council need not provide particular evidentiary

3  findings when it rejects evidence submitted after the ALJ's decision.  *Gomez v. Chater*, 74 F.3d

4  967, 972 (9th Cir. 1996).

5  However, where post-hearing evidence is considered by the Appeals Council, it is

6  considered part of the record on review by this Court.  *Ramirez v. Shalala*, 8 F.3d 1449, 1451-2

7  (9th Cir. 1993).  As there is a reasonable possibility that the evidence would change the outcome

8  of the ALJ's determination, it is appropriate to remand the matter to allow the ALJ to consider the

9  evidence.

10  **D.     Plaintiff's residual functional capacity**

11  Plaintiff argues the ALJ erred in finding plaintiff retained the residual functional capacity

12  to perform sustained work activities at an average level and could perform past work as a

13  construction worker. Because the ALJ erred in evaluating the evidence in this case, the Court

14  concludes plaintiff's RFC must be reassessed.

15  **V.  CONCLUSION**

16  For the foregoing reasons, the Court recommends that this case be **REVERSED** and

17  **REMANDED** for further proceedings consistent with this Report and Recommendation.  The

18  Court concludes the ALJ's findings at step two that "substance abuse in remission" is a severe

19  impairment and his RJC evaluation which indicated that this severe impairment is "contrary to the

20  medical evidence of record" require clarification.  Further, as discussed above, the ALJ erred in

21  evaluating the medical evidence and Ms. Compton's opinions.  The Court recommends that on

22  remand, the ALJ be directed to reevaluate all the medical evidence and plaintiff's credibility.  The

23  ALJ should (1) reevaluate and further develop, as necessary, the medical evidence in the record;

REPORT AND RECOMMENDATION – 9

(2) reevaluate Dr. Lemere's, Dr. Parker's, Dr. Ruddell's and Dr. Dees's opinions and Ms. Compton's opinions; (3) clarify at step two whether substance abuse in remission or is not in remission; (4) reevaluate plaintiff's credibility; (5) reevaluate plaintiff's RFC; (6) reevaluate as necessary what disabling effects are caused by drug and alcohol use and what are caused by plaintiff's other impairment and (7) reassess steps four and five of the sequential evaluation process with the assistance of a vocational expert if deemed appropriate.

A proposed order accompanies this Report and Recommendation.

DATED this 12th day of April, 2010.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION – 10